**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**JAMES BEAGLE,**

                            **Plaintiff,**

    vs.                                      1:14-cv-00769
                                                        (MAD)

**COMMISSIONER OF SOCIAL SECURITY**,
                            **Defendants.**
_____

**APPEARANCES:**                           **OF COUNSEL:**

**JAMES BEAGLE**
Plaintiff, *pro se*
400 Crooks Grove Road
Ballston Spa, New York 12020

**SOCIAL SECURITY ADMINISTRATION**    **JOSHUA L. KERSHNER, AUSA**
Office of General Counsel
26 Federal Plaza, Room 3904
New York, New York 10278-0004
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiff James Beagle ("Plaintiff") commenced this action on June 25, 2014, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of a decision of the Commissioner of Social Security (the "Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). *See* Dkt. No. 1.

### II. BACKGROUND

Plaintiff's date of birth is February 27, 1960, which made him forty-eight years old at the time he protectively filed for SSI and DIB on May 12, 2008. *See* Dkt. No. 14, Administrative

Transcript ("T."), at 267. Plaintiff has taken the General Educational Development ("GED") high school equivalency test and received a New York State High School Equivalency Diploma. *See id.* at 49. He has not had any formal vocational training, and he is able to read, write, and perform mathematical calculations. *See id.* at 49, 102. Plaintiff was in the Army Corps of Engineers for three years. *See id.* at 102-03. He was honorably discharged 1979. *See id.* at 103. During that time, Plaintiff repaired bridges and roads, performed welding and worked with concrete. *See id.* at 103.

Plaintiff worked in maintenance and also as a machine operator and a crane operator during the years of 1997 through 2004. *See id.* at 105-07, 255-58. He began his employment with Curtis Lumber Company in 2004 and worked there continuously from 2005 through 2008 in the facilities maintenance department. *See id.* In that job, Plaintiff provided maintenance and repair to twenty-three commercial buildings as well as to the area retail stores, which included roof and wall repair, plumbing and electrical work, appliance and fixture repairs. *See id.* at 104. This work required standing, walking, sitting, and climbing as well as travel to the buildings and stores. *See id.* at 80. He was laid off from that position in 2008, *see id.* at 104 and Plaintiff has not worked in any capacity since February 1, 2008. *See id.* at 107.

On May 27, 2010, Plaintiff completed applications for DIB and SSI alleging onset of disability on February 1, 2008. *See id.* at 241-46. Plaintiff claimed, in his application, that his ability to work is limited by the following conditions: alcoholism, hypertension, atrial fibrillation, diabetes mellitus type II, chronic kidney disease stage 2, history of chronic heart failure, elevated liver function tests, low platelet count, low potassium levels, low magnesium levels, elevated lipase levels, shortness of breath on exertion, and thyroid problems, among other conditions. *See id.* at 284, 305. The claim was disapproved on August 27, 2010, *see id.* at 155-58, and he filed a

2

request for a hearing, which was then assigned to Administrative Law Judge Dale Black-Pennington. *See id.* at 94-123, 163-64. A hearing was held on June 30, 2011, *see id.,* and Plaintiff amended the onset date of disability from February 1, 2008 to February 27, 2010. *See id.* at 42, 121-22.

At Plaintiff's hearing on June 30, 2011, Plaintiff claimed that he was unable to work because he had shortness of breath with any exertion, *see id.* at 107-08, and numbness in his feet, *see id.* at 108-09. In a decision dated August 10, 2011, the ALJ determined that Plaintiff was not disabled under the Social Security Act. *See id.* at 132-50. Plaintiff timely filed a request for review by the Appeals Council, *see id.* at 194-95, and the Appeals Council granted the request and vacated the ALJ's decision. *See id.* at 152-53. The Appeals Council found that alcohol abuse and depression were properly supported findings of severe impairments, but Plaintiff's residual functional capacity ("RFC") did not reflect any limitations secondary to the severe mental impairments. *See id.* at 152. On remand, the ALJ was directed to further evaluate Plaintiff's mental impairments. *See id.*

At his second hearing on May 1, 2013, Plaintiff claimed he was not able to work because of his Grave's disease, depression, anxiety, and increased numbness in his feet. *See id.* at 51-52. He continued to complain of shortness of breath on exertion. *See id.* Plaintiff testified that he started psychotherapy treatment for his depression and anxiety. *See id.* at 56. Plaintiff describes that he is depressed and paranoid of what other people are thinking about him. *See id.* at 52. He does not have friends over, but he visits with his parents once a week when they are local, which is about six months of the year. *See id.* at 62. He also describes that he is anxious and panicked when he is in crowds. *See id.* at 56-57. Plaintiff gets up at six in the morning and will watch television all day. *See id.* at 58. He prepares his meals, washes dishes, and walks to the mailbox

at his home. *See id.* at 60. He is also able to do his laundry once a week and go grocery shopping once per month. *See id.* at 61.

The ALJ arranged for the testimony of Rita W. Clark, M.D., who is board certified in psychiatry. *See id.* at 68. Dr. Clark testified that she reviewed exhibits 1F through 28F and listened to the hearing testimony from that day. *See id.* at 68-69. Dr. Clark testified that the only medical evidence of mental health are Plaintiff's substance abuse records from 2010 and a consultive examination performed by Dr. Thomas Osika in 2010. *See id.* at 71. When Dr. Clark was questioned by Plaintiff's counsel, she testified that she heard Plaintiff's testimony that he was taking ativan, which is prescribed for anxiety. *See id.* at 74. Dr. Clark stated that she was not aware of who prescribed this medication for Plaintiff but postulates that it is a drug that is haphazardly prescribed, incorrectly prescribed, and prescribed on the patient's demand. *See id.* at 75. Dr. Clark also concluded that alcoholism was a severe impairment but not any longer. *See id.* at 72. Dr. Clark testified that Plaintiff had a relapse in 2013, but then stated that he has been sober for three years. *See id.* at 72. Based upon the medical evidence and Plaintiff's testimony, Dr. Clark opined that Plaintiff's depression and alcoholism are not a severe impairments and do not meet or equal a listed impairment of 20 C.F.R. Part 404, Subpt. P, App. 1 ("listed impairment"). *See id.*

The ALJ issued her second decision dated July 5, 2013, finding that Plaintiff was not disabled. *See id.* at 11-25. Plaintiff timely requested review by the Appeals Council, and when the request was denied on May 8, 2014, the ALJ's decision became the Commissioner's final decision. *See id.* at 1-4. In her decision, the ALJ found the following: (1) Plaintiff met the insured status requirements of the Social Security Act through December 31, 2012; (2) Plaintiff has not engaged in substantial gainful activity since February 27, 2010; (3) Plaintiff's physical

4

conditions of non-obstructive coronary artery disease and atrial fibrillation are severe impairments; (4) Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments; (5) Plaintiff has the residual functional capacity ("RFC") to carry out medium work as defined in 20 C.F.R. §§ 404.1567(b); 416.967(b) with the exception that Plaintiff can stand or walk up to two hours of an eight hour work day and can sit up to six hours in an eight hour work day, can occasionally push/pull with lower extremity, cannot kneel or crawl, can occasionally climb, balance, crouch and stoop, and must avoid concentrated exposure to temperature extremes, humidity/ wetness, vibrations, heights, and hazardous machinery; (6) Plaintiff's RFC renders him not capable of performing past relevant work; and, (7) considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. *See id.* at 11-25. Accordingly, the ALJ found that Plaintiff is not disabled, as defined in the Social Security Act. *See id.*

Plaintiff commenced this action for judicial review of the denial of her claims by the filing of a complaint on June 25, 2014. *See* Dkt. No. 1. Defendant has moved for judgment on the pleadings. *See* Dkt. Nos. 19. Having review the administrative transcript, the Court orders that the Commissioner's decision is reversed and remanded.

### III. DISCUSSION

**A. Standard of Review**

In a judicial review of a final decision by the Commissioner under 42 U.S.C. § 405, the Court does not determine anew whether a plaintiff is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Court must examine the administrative transcript to ascertain whether the correct legal

standards were applied and whether the decision is supported by substantial evidence. *See Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009); *Schaal v. Apfel*, 134 F.3d 496, 500-01 (2d Cir. 1998). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations and quotations omitted).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained. *See Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). This Court must afford the Commissioner's determination considerable deference, and may not substitute its own judgment, even if a different result could be justifiably reached by the Court if it engaged in its own analysis. *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.     Analysis**

*1. Five-step analysis*

For purposes of both SSI and DIB, a person is disabled when he is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The sequential evaluation process is as follows:

> "In essence, if the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the

6

> impairment is not one [listed in Appendix 1 of the regulations] that
> conclusively requires a determination of disability, and (4) that the
> claimant is not capable of continuing in his prior type of work, the
> Commissioner must find him disabled if (5) there is not another type
> of work the claimant can do."

*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002) (internal citations omitted)). The claimant bears the burden of proof on the first four steps, while the Social Security Administration bears the burden on the last step. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

### *2. Severe Impairments*

Step two of the five-step sequential evaluation for determining whether a person is disabled, referred to as the "severity regulation", states:

> If you do not have any impairment or combination of impairments
> which significantly limits your physical or mental ability to do basic
> work activities, we will find that you do not have a severe
> impairment and are, therefore, not disabled. We will not consider
> your age, education, and work experience.

20 C.F.R. §§ 404.1520(c); 416.920(c), *see Bowen v. Yuckert*, 482 U.S. 137, 140-141 (1987). The phrase "basic work activities" are "the abilities and aptitudes necessary to do most jobs" and include

> [p]hysical functions such as walking, standing, sitting, lifting,
> pushing, pulling, reaching, carrying, or handling... seeing, hearing,
> and speaking . . . [u]nderstanding, carrying out, and remembering
> simple instructions . . . [u]se of judgment . . . [r]esponding
> appropriately to supervision, co-workers and usual work situations .
> . . [d]ealing with changes in a routine work setting.

20 C.F.R. §§ 404.1521(b), 416.921(b); *see Bowen*, 482 U.S. at 141.

The purpose of the severity regulation was to create a "threshold determination of the claimant's ability to perform basic, generically defined work functions, without at this stage engaging in the rather more burdensome medical-vocational analysis required by [42 U.S.C.] §

7

423(d)(2)(A)." *Dixon v. Shalala*, 54 F.3d 1019, 1022 (2d Cir. 1995). In *Bowen v. Yuckert*, the Supreme Court upheld this regulation to screen out *de minimis* claims – those claims where there are "slight abnormalities that do not significantly limit any 'basic work activity.'" *Bowen*, 482 U.S. at 158 (O'Connor, J. concurring). The ALJ found that Plaintiff's non-obstructive coronary artery disease and atrial fibrillation were severe impairments but excluded Plaintiff's alcoholism, depression, and diabetes, among other conditions. *See id.* at 13-17. After reviewing the complete record in this case, the Court finds that the ALJ's severe impairment determination is not supported by substantial evidence.

It appears that Plaintiff first complained of numbness in his feet on June 1, 2010 to an internist, Dr. Anita Vigorito, at the Stratton VA Medical Center. *See id.* at 722-23. Dr. Vigorito noted that Plaintiff had not been diagnosed with diabetic neuropathy. *See id.* at 722. He had not previously complained to Dr. Robert Evans, his primary care physician, of any foot numbness. *See id.* at 722-723. The medical records from Dr. Evans are not complete for a period of time between mid-2010 though February 2012, but the other medical evidence indicates that Plaintiff continued treatment with him during that time. *See id.* at 778.

On December 9, 2010, Plaintiff underwent an electromyogram (EMG) and nerve conduction study based upon his complaints to Dr. Evans that he had bilateral tingling and numbness in his feet and balancing problems. *See id.* Plaintiff reported to the physician that he had first started having tingling in his feet four to five years earlier and that, approximately one year earlier, he started to have balancing problems. *See id.* The results showed that Plaintiff has a peripheral neuropathy affecting the axons predominantly of the sensory studies. *See id.* The report states that "F-waves" were not obtained during the studies, "which is usually the first sign of neuropathy." *See id.* The study findings were consistent with Plaintiff's symptoms of

8

parathesis (numbness) and balance issues. *See id.* During the physical exam, it is noted that Plaintiff is able to walk with a normal gait. *See id.* at 779.

On June 30, 2011, Plaintiff's treating primary care provider completed a medical source statement, which indicates that Plaintiff has neuropathy in his lower legs and feet causing symptoms of decreased sensation and burning. *See id.* at 793-98. The medical source statement also states that Plaintiff ability to maintain attention and concentration on work tasks throughout an eight hour work day will be significantly compromised by his neuropathy and his medications. *See id.* at 797. It was the primary care providers opinion that the decreased sensation in Plaintiff's feet would be directly effected by temperature extremes and change. *See id.* at 798.

In February and December 2012, Plaintiff's primary care records reflect Plaintiff's diagnosis of polyneuropathy in diabetes and, on neurological examination, it is noted that his monofilament sensation is absent bilaterally. *See id.* at 794. Plaintiff was taking medication, gabapentin, for the neuropathy. *See id.* at 788, 793. In January 2013, physician assistant William Fielding composed a letter stating that Plaintiff "suffers from polyneuropathy in his feet and lower legs as a complication from diabetes. The neuropathy is progressive. On exam he has decreased sensation and proprioception. Both will have a negative effect on his balance and make him prone to falling." *See id.* at 804.

Dr. Evans completed a temporary disability form entitled "MEDICAL EXAMINATION FOR EMPLOYABILITY ASSESSMENT, DISABILITY SCREENING, AND ALCOHOLISM/DRUGS ADDICTION DETERMINATION." *See id.* at 830-31. Coronary artery disease, hypertension, diabetes, and polyneuropathy were all listed as permanent medical conditions. *See id.* Dr. Evans noted Plaintiff's treatment at St. Peter's Addiction Recovery Center ("SPARC"). *See id.* at 831. Dr. Evans opined that, taking into consideration physical, mental and

9

addiction limitations, Plaintiff is unable to function. *See id.* He also identified diabetic neuropathy and severe coronary artery disease as severe impairments. *See id.*

The record is replete with medical evidence from Plaintiff's treating medical providers (1) objectively diagnosing Plaintiff's with polyneuropathy from diabetes, (2) finding Plaintiff's symptoms of numbness, burning, and tingling in his feet to be consistent with that diagnosis, and (3) opining that his polyneuropathy is a progressing condition and a severe impairment. The ALJ's brief statement that Dr. Vigorito "noted that [Plaintiff] does not have a diagnosis of diabetic neuropathy" is insufficient to support excluding it as a severe impairment. *See id.* at 15. Dr. Vigorito's comment is taken out of context, and the comment was made six month before Plaintiff's underwent the EMG and nerve conduction studies, which definitively diagnosed him with neuropathy in his feet and lower extremities. *See id.* at 722, 778.

In addition to the physical impairments, the Court also finds that the ALJ's determination that Plaintiff's depression and alcoholism are not severe impairments is also not supported by substantial evidence. The ALJ had previously determined that depression and recovering alcoholism were severe impairments in her prior decision dated August 10, 2011. *See id.* at 135-145. The Appeals Council found that those severe impairments were supported by the evidence. *See id.* at 152-53. However, on remand, the ALJ found that Plaintiff's mental impairments were not severe impairments relying primarily on a consultative review of records and a consultative examination. *See id.* at 17-18.

Plaintiff's primary care records reflect that Plaintiff was experiencing symptom of depression in May 2008 after losing his job. *See id.* at 619. The office notes indicate that he began drinking alcohol during this period of time. *See id.* at 619, 635. Dr. Evans observes that Plaintiff appears depressed and prescribed ativan to help with anxiety and alcohol withdrawal.

*See id.* Plaintiff continued to report depression and was diagnosed with anxiety. *See id.* Dr. Evans continued to diagnose and treat Plaintiff for anxiety throughout his treatment. *See id.* at 620-55. In July 2008, Dr. Evans states that Plaintiff suffered from insomnia and resorted to alcohol use and abuse. *See id.* at 626. Plaintiff reported that he continued to drink alcohol six times per day in November 2008. *See id.* at 633. Dr. Evans recommended addiction services to Plaintiff at that time. *See id.* at 634. In January 2009, Dr. Evans records that Plaintiff seems unfocussed and notes that his anxiety continues to be a problem. *See id.* at 635. Plaintiff had just completed a five-day treatment at SPARC for alcohol addiction prior to that visit. *See id.*

In April and May of 2009, Dr. Evans reports that Plaintiff has increased anxiety without depression. *See id.* at 637-40. On June 17, 2009, Plaintiff was having some relief of anxiety with medication but reported that the ativan makes him feel "high" and then very tired. *See id.* at 641. Between June 17 and June 29, 2009, Plaintiff suffered an alcohol-related relapse, and, at the office visit, Dr. Evans documented that Plaintiff was suspicious and displayed distrustfulness. *See id.* at 645.

By December 2009, Plaintiff had recently undergone inpatient rehabilitation for alcohol abuse and was reporting depression and tiredness. *See id.* at 648. Dr. Evans treated him for depressive disorder with citalopram hydrobromide and zolpidem tartrate and continued to prescribe ativan. *See id.* at 648-51. Plaintiff was treated at Glens Falls Hospital, in March 2010, for suspected overdose and suicidal threats. *See id.* at 425. Although Plaintiff concealed his substance abuse and mental health issues from the hospital, he was admitted to SPARC and Conifer Park shortly after, in April 2010, for alcohol addiction. *See id.* at 593, 612, 653. At his visit on May 11, 2010, Dr. Evans found Plaintiff to be weak and anxious with shakes and tremors.

11

*See id.* at 653. During his in-patient stay at Conifer Park, Plaintiff was diagnosed with major depressive disorder, anxiety, and alcohol dependence. *See id.* at 596, 603.

Plaintiff underwent a psychosocial assessment at SPARC on October 14, 2010 for outpatient services, which diagnosed him with alcohol dependency and sedative dependancy. *See id.* at 739. Plaintiff was in need of chemical dependency services and had a substantial risk of relapse. *See id.* at 740. George Metcalfe, Jr., LCSW-R, at Saratoga Psychological Associates provided a letter dated April 29, 2013, which stated that Plaintiff was actively receiving treatment for his diagnoses of major depressive disorder that was recurrent and moderate, and alcohol dependence that is in partial sustained remission. *See id.* at 806.

Considering Plaintiff's past medical history up until the time of the second hearing, all of the medical evidence indicates that Plaintiff suffers from depression, anxiety, and alcoholism. The psychiatric review completed by Dr. A. Hochberg has two check marks indicating he reviewed Plaintiff's records for affective disorders and substance addiction disorders, and the third check mark indicates that Plaintiff does not have a severe impairment. *See id.* at 697. This review is dated July 28, 2010 and, according the records, was completed about two months after plaintiff was release from his in-patient treatment at Conifer Park for alcohol addiction and presumably during the period of time Plaintiff was undergoing outpatient treatment for substance abuse. *See id.* at 497, 593.

At the time of discharge from Conifer Park, Plaintiff was identified as "a severe-stage alcoholic with many life consequences," and the record reflects that he appeared "extremely fragile, physically, mentally and emotionally." *See id.* at 594. Plaintiff was bedridden for the first four days at Conifer Park after spending twenty-one days in detox. *See id.* at 594. Plaintiff's in-patient treatment records document on more than one occasion that Plaintiff demonstrated

12

significant cognitive impairment, and, at discharge, Plaintiff appeared "significantly cognitively impaired due to the ravages of alcoholism." *See id.* at 593. Plaintiff "minimally met his discharge criteria" when he was released. *See id.* at 594. Taking into consideration, Plaintiff's documented mental state and physical condition at the end of May 2010, Dr. Hochberg's consultive review is not substantial evidence to support a finding that Plaintiff's depression, anxiety, and substance abuse are not severe impairments.

Dr. Thomas Osika, a state examining psychologist, met with Plaintiff on July 19, 2010 and recommended that Plaintiff continue with his alcohol outpatient treatment. *See id.* at 692. Dr. Osika diagnosed Plaintiff's mental conditions as depressive disorder and alcohol dependence in early remission. *See id.* The ALJ notes that Dr. Osika evaluated Plaintiff's symptoms as *moderate*. *See id.* Dr. Osika did not provide an opinion on whether Plaintiff's abilities to use judgment or respond appropriately to supervision and usual work situations were affected by his moderate symptoms. *See Goff v. Astrue*, 993 F. Supp. 2d 114, 120 (N.D.N.Y. 2012) (stating that a finding of not severe "should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work'"). In addition, since Dr. Osika's one-time examination of Plaintiff was two months after his discharge from Conifer Park, where it was noted that Plaintiff minimally met the criteria for discharge and the examination did not include a review of Plaintiff's medical records, this report is also not substantial evidence to support the ALJ's severity determination.

To the extent that the ALJ attempts to rely upon the testimony of Dr. Clark, the Court finds her testimony to be unreliable on its face because it is contradicted by the treating medical records and her testimony indicates that she did not fully review all of the medical evidence. Dr. Clark testified substance abuse is not a severe impairment because Plaintiff has been sober for

13

three years, *except* for a relapse in 2013. *See id.* at 72. Dr. Clark also testified that she reviewed all the medical evidence, but testified that the only evidence of mental health conditions were a consultive exam in 2010 and records of Plaintiff's detoxification treatment in 2010. *See id.* at 71. In fact, Plaintiff's primary care records from 2008 up until the time of the hearing and multiple hospital records contain documentation and treatment for Plaintiff's mental health problems. Dr. Clark admitted that she had not known Plaintiff was taking ativan from her review of the medical records but had heard Plaintiff testify to that information at the hearing. *See id.* at 74.

Dr. Clark gave inconsistent statements about Plaintiff's alcohol use, and she overlooked four years worth of his primary care treatment from Dr. Evans diagnosing and treating Plaintiff's substance abuse, depression, and anxiety, as well as, Plaintiff's other medical records diagnosing and documenting these conditions. Plaintiff was examined and diagnosed with major depressive disorder by a staff psychiatrist at Conifer Park, *see id.* at 594, which Dr. Clark did not account for in her assessment. The Court finds that her opinion is not substantial evidence to support a finding that Plaintiff's mental health conditions are mild.

In concluding that Plaintiff's mental impairments do not cause more than minimal limitations in his ability to perform basic mental work activities, the ALJ appropriately engaged in an evaluation of mental impairments under 20 C.F.R. § 404.1520a(b)-(e). *See id.* at 17-18. However, the ALJ relied almost exclusively on Dr. Osika's report, which, as described above, was a one-time exam in 2010 without a review of Plaintiff's medical treatment records. *See id.* The ALJ does not reference Plaintiff's testimony or any of Plaintiff's treatment records about his daily living activities, social functioning, episodes of decompensation, and concentration, persistence, or pace. *See id.*

Under these circumstances, the ALJ's evaluation of Plaintiff's mental impairments is not supported by substantial evidence. The ALJ must consider all evidence in the record when making a determination. *See* C.F.R. § 404.1520(3). The ALJ is not permitted to "pick and choose" only such evidence that supports his or her determination. *See Sutherland v. Barnhart*, 322 F. Supp. 2d 282, 289 (E.D.N.Y. 2004). If the Court finds that the ALJ ignored "parts of the records that are probative" of the disability claim, it constitutes grounds to remand the claim. *See id.* (citing *Lopez v. Sec'y of Dep't of Health & Human Servs.*, 728 F.2d 148, 150-51 (2d Cir. 1984). In the decision, the ALJ selected small portions of evidence to support her finding that Plaintiff's mental impairments were not severe while ignoring almost all of Plaintiff's treatment records.

It may be the case that, after proper consideration of the record, Plaintiff is found to be not disabled under the Social Security regulations. However, substantial evidence does not support the ALJ's severe impairment determinations at step two of the analysis. While it has been determined in other cases that the failure to find an impairment to be severe where the ALJ continued through the remaining steps of the analysis was harmless error, *see Goff v. Astrue*, 993 F. Supp. 2d 114, 121-22 (N.D.N.Y. 2012), the same cannot be said here. Excluding the polyneuropathy as a result of diabetes and the mental impairments as severe impairment at step two, tainted the analysis of the remaining steps. On remand, the Court directs that a new ALJ be assigned to Plaintiff's claim instead of having the same ALJ review Plaintiff's claim for a third time. *See Taylor v. Astrue*, No. CV-07-3469, 2008 WL 2437770, *5 (E.D.N.Y. June 17, 2008) (citing *Ortiz v. Chater*, No. 95 CV 3126, 1997 WL 50217, *3 n.1 (E.D.N.Y. Jan. 30, 1997).

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, Defendant's submission, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that the Commissioner's decision denying disability benefits is **REVERSED** and this matter is **REMANDED** to the Commissioner, pursuant to sentence four of the 42 U.S.C. § 405(g), for further proceedings consistent with this Memorandum-Decision and Order; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: December 8, 2015
       Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge